UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PETER STOCK,

                    Plaintiff,

        - against -

FIERA CAPITAL INC.,

                    Defendant.

24-cv-6888 (JGK)

MEMORANDUM OPINION
AND ORDER

---

JOHN G. KOELTL, District Judge:

The plaintiff, Peter Stock, brings this action against the defendant, Fiera Capital Inc. ("Fiera"), alleging employment discrimination in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NY-CHRL"). Fiera moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 dismissing all of Stock's claims. For the following reasons, Fiera's motion is **granted in part** and **denied in part**.

I.

The following facts are based on the parties' Local Civil Rule 56.1 statements and supporting papers and are undisputed unless otherwise noted.

**A.**

Stock joined the United States subsidiary of Fiera, a Montreal-headquartered global asset management firm, in 2011. Def.'s Rule 56.1 Statement ("56.1 Statement") ¶ 1, ECF No. 32. Fiera's founder and then-CEO, Jean-Guy Desjardins, hired Stock, then fifty-seven years old, to help lead the firm's expansion into the United States. Id. ¶¶ 1, 9. Stock remained in that role until 2020, when Desjardins promoted Stock, then sixty-six years old, to Executive Vice President and Global Head of Private Wealth. Id. ¶ 13.

As Global Head of Private Wealth, Stock was responsible for one of Fiera's three business units and reported to Jean-Philippe Lemay, who was then Global President and Chief Operating Officer. Id. ¶ 14. Stock's responsibilities included "growing" and "maintaining" the Private Wealth business, "dealing with operation issues," and "managing" Fiera's investment counselors.[1] Id. ¶ 15.

Also in 2020, Fiera's board of directors and Desjardins began planning for Desjardins's succession. Id. ¶ 16. The board ultimately decided that Lemay would become CEO in January 2022 and Desjardins would transition to Executive Chairman. Id. ¶ 17.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

Lemay would be forty-six years old when he assumed the CEO position; Desjardins would be in his late seventies when he stepped down. Pl.'s Rule 56.1 Counterstatement ¶ 2 ("56.1 Counterstatement"), ECF No. 38; Def.'s 56.1 Reply ¶ 2 ("56.1 Reply"), ECF No. 42 ("Desjardins testified that he was 77 (not 76) years old when he stepped down as CEO in 2022.").

Lemay officially became CEO of Fiera on January 1, 2022, 56.1 Statement ¶ 21, and decided to replace several senior executives, including Stock, id. ¶ 22. By March 2022, Fiera's human resources department had prepared transition materials showing Krista McLeod as the new Global Head of Private Wealth. Id. ¶ 22. The transition materials also included a schedule for Lemay's "[f]irst discussion with Stock" regarding Stock's "[d]eparture from [the] organization" followed by a "[f]inal discussion" a few weeks later. Id.

In early 2022, Lemay informed Desjardins about his decision to replace Stock by the end of the first quarter of 2022. 56.1 Counterstatement ¶ 4. Desjardins agreed with Lemay's decision to replace Stock as Global Head of Private Wealth based on Stock's performance but cautioned Lemay against terminating too many senior executives so early in his tenure. 56.1 Statement ¶ 26. Desjardins instead recommended spacing out the terminations over twelve to eighteen months and deferring Stock's removal until later in that cycle. Id. ¶ 27.

3

On April 28, 2022, Stock texted Desjardins that Lemay had warned Stock that Lemay was "thinking about" making "leadership changes" in Private Wealth in the "coming months." Id. ¶ 30. In Stock's view, "[i]ncluded in that thinking will be rethink[ing] about leadership within [Private Wealth,] ie [sic] me." Id. ¶ 32. On July 8, 2022, Stock again texted Desjardins, wondering if "[p]erhaps [Desjardins] ha[d] come around to thinking and agree[ing] with Lemay that guys like ... [me] are anachronistic and not the future." Id. ¶ 34. Desjardins replied, "Not the case. Let's just be patient." Id. ¶ 35. Stock responded, "Yes. I will be patient ... but the JP Lemay messaging to me about my future at Fiera is a shorter term time horizon." Id. ¶ 36.

Before Lemay was able to replace Stock, however, Fiera's board of directors removed Lemay as CEO following disagreements about Fiera's strategic direction. Id. ¶ 41. The board reinstated Desjardins, then seventy-eight years old, to lead Fiera. Id.

**B.**

Upon returning as CEO in January 2023, Desjardins reorganized the company's executive leadership, converting the former seventeen-member Global Management Committee into a six-member Executive Committee ("ExCo"). Id. ¶¶ 42-43. Stock, as head of one of Fiera's three business lines, was a member of the ExCo. Id. ¶ 43.

4

On March 23, 2023, Stock sent Desjardins a text message asking him whether there was "a reason why [Desjardins] would not consider [Stock] for the US CEO role." 56.1 Counterstatement ¶ 14. Desjardins responded that they would "talk about this when [he was] in [New York] next week." Id. On March 29, 2023, Stock and Desjardins had dinner in New York, during which Desjardins asked Stock how old he was. Id. ¶ 15. Stock responded that he was sixty-nine years old. Id.

Stock and Desjardins met again for a meal on May 18, 2023, during which Desjardins asked Stock about his life plans and whether he believed he would still be working for Fiera in five years. Id. ¶ 18. At the end of the meal, Desjardins again asked Stock how old he was, and Stock again said he was sixty-nine years old. Id.

On July 25, 2023, Stock attended a meeting of the ExCo in New York, which was attended by all but one member. Id. ¶ 20. During the meeting, Desjardins looked directly at Stock and told Stock that he was too old to be considered for succession. Id.; see also Decl. of David W. Garland Supp. Mot. Summ. J. ("Garland Decl.") Ex. 2 ("Stock Tr.") 241:3-245:16, ECF No. 27-2; 56.1 Reply ¶ 20; Decl. of Jonathan Rogin Opp'n Mot. Summ. J. ("Rogin Decl.") Ex. K, ECF Nos. 37-11. Stock then turned to Gabriel Castiglio, Fiera's Chief Legal Officer, and said, "Did he just say that to me?" 56.1 Counterstatement ¶ 21. The next day, Stock

5

sent Desjardins a text message, noting that he took "great exception to [Desjardins's] telling [Stock that he was] too old to be considered for succession purposes." Id. ¶ 22.

Desjardins made a similar comment about Stock's age at an August 2023 meeting of the ExCo. Id. ¶ 28. On September 7, 2023, Stock sent himself a note by email to memorialize that he had "been told by [Desjardins] that [Stock was] 'too old' to be considered for the CEO job ... twice in front of [his] colleagues." 56.1 Counterstatement ¶ 36.

### C.

In early 2023, the board's human resources committee ("HRC"), which is composed entirely of independent directors, began reviewing Fiera's executive compensation. 56.1 Statement ¶ 44. Desjardins informed the ExCo of this review, explaining that Fiera would "conduct a review and hire a consultant to ... look at everybody's compensation" and "make adjustments accordingly." Id. ¶ 46. The HRC retained Willis Towers Watson ("WTW"), an independent consultant, to compare Fiera's executive compensation against the asset management market in Canada and the United States. Id. ¶ 45.

WTW compared each executive's compensation against the market medians for base salary, short-term incentives, and long-term incentives. Id. ¶ 47. WTW found that Stock's base salary was at the market median; that his short-term incentive target

6

was within two percentage points of the Canada/United States benchmark; and that his long-term incentive compensation was consistent with industry norms for Stock's role, which ordinarily does not include long-term incentive compensation. Id. ¶ 49. Based on those findings, WTW recommended that Fiera not change Stock's compensation. Id. ¶ 50. WTW issued its recommendations on July 27, 2023, and the HRC adopted those recommendations on August 8, 2023. Id. ¶¶ 51-52.

### D.

In the summer of 2023, Maxime Ménard, then the president and CEO of another Canadian investment firm, reached out to Desjardins about the possibility of succeeding Desjardins as Fiera's next CEO. 56.1 Statement ¶¶ 77-78. Ménard was forty-nine years old at the time. 56.1 Counterstatement ¶ 23. Desjardins responded that Fiera's global CEO position was not then available but noted that Fiera was looking for a CEO of its Canadian operations. 56.1 Statement ¶ 79. Ménard responded that he would accept the offer to be the CEO of Fiera's Canadian operations only if he was also made Global Head of Private Wealth. Id. ¶ 83. Desjardins initially declined to offer Ménard the Private Wealth position, id. ¶ 88, but ultimately relented later in the summer, id. ¶ 89.

Ménard accepted Fiera's offer on November 1, 2023. Id. ¶ 93. Desjardins traveled to New York on November 14, 2023, to

7

inform Stock that Ménard would replace him as Global Head of Private Wealth, but that Stock would remain at Fiera through June 2024. Id. ¶¶ 94-95. Desjardins explained that Stock would remain as Global Head of Private Wealth until Ménard arrived in January 2024, at which point Stock would become "Executive Chairman Global Private Wealth and Senior Vice President Strategic Development." Id. ¶ 96.

On November 27, 2023, Desjardins and Stock met again to discuss Desjardins's reasons for replacing Stock with Ménard. Id. ¶¶ 100-01. Desjardins explained that Stock had been replaced as Global Head of Private Wealth for performance reasons. Id. ¶ 102. Desjardins expressed concern that the Private Wealth business, for which Stock was responsible, "wasn't growing." Id. ¶ 105. Desjardins also told Stock that Stock was "not great at managing a business," and that Fiera "needed a change." Id. ¶ 106.

According to Stock, at the time Desjardins decided to replace Stock with Ménard, Desjardins had no other role in mind for Stock and believed it was likely that Stock's employment would end on June 30, 2024. 56.1 Counterstatement ¶ 35. Fiera for its part contends that Desjardins did not have a specific role in mind, but that he hoped to "come up with something new" adapted to Stock's qualifications that "would keep him professionally busy and active and ideally within Fiera." 56.1 Reply

8

¶ 35; see also Rogin Decl. Ex. A ("Desjardins Tr.") 139:4-14, ECF No. 37-1. According to Desjardins, he expected Stock to be terminated only "absent coming up with some new role for Stock," and that it was merely "a probability that he would be" terminated. Desjardins Tr. 140:15-141:4.

In early December 2023, Stock met with Castiglio, Fiera's chief legal officer, to discuss the terms of Stock's separation from Fiera. 56.1 Counterstatement ¶ 41. On December 8, 2023, Castiglio sent Stock a draft letter agreement confirming that Stock's employment would terminate on June 30, 2024. Id. ¶ 42.

Stock made several efforts to extend his employment at Fiera past June 30, 2024. On January 18, 2024, Stock texted Desjardins asking about the possibility of remaining at Fiera, and Desjardins responded that he had met with Castiglio and would follow up with Stock later. Id. ¶ 47. And on February 5, 2024, Stock had a telephone call with Ménard, during which he raised the possibility of a future role at Fiera as an investment counselor or as a leader of Fiera's United States Private Wealth business in New York. Id. ¶ 48. For his part, Stock contends that he never declined a position as an investment counselor. Id. ¶ 51; see also Decl. of Peter Stock Opp'n Mot. Summ. J. ("Stock Decl.") ¶ 35, ECF No. 36. According to Fiera, Stock initially appeared open to a position as an investment counselor but later rejected it. 56.1 Reply ¶ 51.

9

On February 15, 2024, Castiglio told Stock that there was no role available for Stock in Fiera's United States Private Wealth division. 56.1 Counterstatement ¶ 52. Stock texted Desjardins the next day informing him of what Castiglio had said. Id. ¶ 53. Fiera and Stock formally agreed on May 7, 2024, that Stock's employment would end on June 30, 2024. Id. ¶ 55.

## II.

The standard for granting summary judgment is well established. The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter or matters that "it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts which are material, and

10

"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of N.Y., 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998).

### III.

Stock alleges that Fiera discriminated against him based on his age in violation the NYSHRL and the NYCHRL in two ways. First, Stock claims that his employment was terminated because of his age. Second, Stock claims that Fiera decided against

11

increasing his compensation because of his age, even though every other member of the ExCo received a pay increase.

The NYCHRL makes it "an unlawful discriminatory practice ... [f]or an employer or an employee ..., because of the actual or perceived age ... of any person ... [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a)(3). Claims under the NYCHRL "are governed by a more permissive standard" than age-discrimination claims brought under federal law. McLeod v. Gen. Vision Servs., Inc., No. 13-cv-06824, 2018 WL 3745662, at *7 (S.D.N.Y. Aug. 6, 2018). Plaintiffs need not allege that "discriminatory animus was the but-for cause or even the primary motivation of their alleged mistreatment." Delo v. Paul Taylor Found., Inc., 685 F. Supp. 3d 173, 183 (S.D.N.Y. 2023). They need only establish that they were "treated less well at least in part because of" their age. Id. (quoting Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013)). It is enough to "show differential treatment of any degree based on a discriminatory motive." Gorokhovsky v. N.Y.C. Hous. Auth, 552 F. App'x 100, 102 (2d Cir. 2014). "The severity and pervasiveness of conduct is 'relevant only to the issue of damages' and 'the challenged conduct need not even be tangible (like hiring or firing).'" Verne v. N.Y.C. Dep't of

Educ., 697 F. Supp. 3d 30, 60 (S.D.N.Y. 2023) (quoting Mihalik, 715 F.3d at 110).

The NYSHRL similarly provides that "[i]t shall be an unlawful discriminatory practice ... [f]or an employer ..., because of an individual's age, ... to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). Previously, discrimination claims under the NYSHRL were treated as analytically identical to claims brought under the federal Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. See Doolittle v. Bloomberg L.P., No. 22-cv-9136, 2023 WL 7151718, at *7 (S.D.N.Y. Oct. 31, 2023). In 2019, however, the NYSHRL was amended to provide that "[t]he provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed." N.Y. Exec. Law § 300. This amendment "render[ed] the standard for [NYSHRL] claims closer to the standard of the NYCHRL." Livingston v. City of N.Y., 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021); see also Charles v. City of N.Y., No. 21-cv-05567, 2023 WL 2752123, at *6 (S.D.N.Y. Mar. 31, 2023) (considering the plaintiff's NYCHRL and NYSHRL claims together).

13

**A.**

Stock first claims that Fiera terminated him at least in part because of his age. In support of his contention, Stock points to four comments by Desjardins regarding Stock's age. First, Desjardins asked Stock how old he was on March 29, 2023, one week after promising Stock that the two would talk about why Stock was not being considered for the U.S. CEO role. 56.1 Counterstatement ¶¶ 14-15. Second, on May 18, 2023, Desjardins asked Stock about whether he intended to remain at Fiera in five years' time and again asked how old Stock was. Id. ¶ 18. Third, on July 25, 2023, during an ExCo meeting, Desjardins looked directly at Stock and told him that he was too old to be considered for the CEO role. Id. ¶ 20. Fourth, in August 2023, during another ExCo meeting, Desjardins made a similar comment about Stock's age. Id. ¶ 28.

Fiera argues that it is entitled to summary judgment on Stock's termination claim, despite the record evidence that Desjardins made those statements, for three reasons. First, it contends that Stock was offered other roles, which would permit him to remain at Fiera, but declined them. Second, Fiera argues that Desjardins's statements were merely stray remarks rather than evidence supporting an inference of age discrimination. And third, Fiera argues that Desjardins's own age and decision to hire Stock in the first place create strong countervailing

14

inferences against discrimination. None of these arguments is persuasive.

**1.**

Fiera first argues that there is no genuine factual dispute that Stock could have continued working at Fiera after June 30, 2024, if only he had remained more flexible about the kind of role he would accept. In Fiera's view, Stock was the one who declined an alternative position, and thus it was ultimately Stock's decision to leave Fiera. Even putting aside its legal viability, this argument fails because factual disputes abound.

Fiera repeatedly insists that Stock was offered an investment counselor role and expressly declined it, but there is ample record evidence suggesting that Stock would have considered such a role and that several Fiera executives believed it was likely that Stock's employment would end on June 30, 2024. For example, Stock testified during his deposition that he did not specifically recall whether he said he was "not interested in an investment counselor role," but that he thought he said he "would be interested in any role" and would "discuss any role that came that [Fiera was] willing to talk about." Stock Tr. 405:12-24.

Stock also repeatedly testified that his "understanding was that there wasn't any role for [him]" at Fiera and that Castiglio, when asked about future roles, said "[e]ssentially

15

that that wasn't going to happen" and that "it didn't look like there was another opportunity for" Stock. Id. 404:8-14. Likewise, Desjardins testified during his deposition that he expected Stock to be terminated "absent coming up with some new role for" Stock, and that it was "a probability that he would be" terminated. Desjardins Tr. 140:15-141:4. And Castiglio sent Stock a draft letter in December 2023 confirming that Stock's employment would terminate on June 30, 2024. There is therefore, at a minimum, a genuine factual dispute over whether Fiera ever seriously considered allowing Stock to remain at the company after June 30, 2024.

## 2.

Fiera's second argument — that Desjardins's comments regarding Stock's age were merely stray remarks — fares no better. To determine whether a comment is probative of discrimination or merely a stray remark under the NYCHRL, courts must consider (1) "whether the remark was made by a decisionmaker or supervisor"; (2) "when the remark was made in relation to the employment decision at issue"; (3) "whether a juror would regard the remark as discriminatory"; and (4) "whether it was related to the decision making process." Alhaj v. N.Y.C. Health & Hosps. Corp., 177 N.Y.S.3d 433, 453 (N.Y. Sup. Ct. 2022); see also Henry v. Wyeth Pharms. Inc., 616 F. 3d 134, 149 (2d Cir. 2010).

16

Each factor supports the conclusion that Desjardins's comments are probative of discriminatory motive. Desjardins was plainly a decisionmaker with respect to Stock's termination. Fiera does not dispute that by August 30, 2023, Desjardins was the one who decided to hire Ménard for the Private Wealth role. 56.1 Reply ¶¶ 31-32. Fiera instead quibbles by insisting that "giving Ménard [Private Wealth] was not equivalent to terminating Stock." Reply 5. But as explained above, whether Fiera ever intended to provide Stock with an alternative role past June 30, 2024, is a disputed factual issue, and there is no dispute that Desjardins selected Ménard to replace Stock as Global Head of Private Wealth.

Second, several of Desjardins's comments were made in the months before and after he decided to replace Stock with Ménard. Fiera contends that it decided to terminate Stock at two separate times — once in January 2022, when Lemay was CEO, and again around June 30, 2024, after Ménard determined there was no alternative role for Stock at Fiera. But Stock's argument is that Fiera effectively decided to terminate him in August 2023, when Desjardins resolved to replace him with Ménard. Fiera resists this conclusion by claiming that it "requires conflating the August 2023 transfer of [Private Wealth] to Ménard with the 2024 determination that no role remained." Reply 7. But whether those two decisions were distinct is itself the subject of a genuine

17

factual dispute. And in any event, treating June 30, 2024, as the date on which Fiera decided to terminate Stock would not change the analysis because Stock "has adduced evidence that, if believed, tends to show that the remarks were part of a sequence culminating in his discharge." Danzer v. Norden Sys., Inc., 151 F.3d 50, 55 (2d Cir. 1998).

Third, Fiera claims that no reasonable factfinder could conclude that Desjardins's questions about Stock's age in March and May 2023 were probative of discriminatory motive. To the contrary, a reasonable factfinder very well could so conclude. Stock notes, for example, that Desjardins made his March 29, 2023, comment about Stock's age less than a week after he told Stock that they would discuss in person why Stock was not being considered for the U.S. CEO role. See Rogin Decl. Ex. F; Stock Tr. 261:18-264:4. Moreover, Stock points to other, more direct comments about the relationship between his age and his prospects for holding leadership roles at Fiera, which Stock claims form a pattern of discriminatory remarks by Desjardins.

Finally, Fiera claims that Desjardins's later comments about Stock being "too old" are irrelevant because they concerned only CEO succession, which is not the position from which Stock was terminated. But a reasonable factfinder could easily conclude that Desjardins's comments about Stock's fit for one

18

leadership position were probative of his views on Stock's fit for other leadership positions at Fiera based on Stock's age.

### 3.

Finally, Fiera argues that there is evidence in the record tending to create an inference against age discrimination. Fiera notes, for example, that Desjardins promoted Stock to Global Head of Private Wealth when Stock was sixty-six and appointed him to the ExCo when Stock was sixty-nine. Fiera also points out that Desjardins is "nearly a decade older than Stock." Reply 8. In Fiera's view, these facts "undermine[] the inference Stock seeks to draw." Id. But the Court's role at this stage is not to weigh the evidence. Whether this countervailing evidence is enough to prove that Desjardins and Fiera were not motivated, at least in part, by Stock's age is an issue for the factfinder to decide. Danzer, 151 F.3d at 55.

*    *    *

A reasonable factfinder could conclude, based on the record evidence, that Stock's age was a motivating factor in Fiera's decision to terminate him. Fiera's motion for summary judgment dismissing Stock's termination claims under the NYCHRL and NYSHRL is therefore **denied.**

### B.

Stock next claims that Fiera declined to increase his compensation because of his age. Fiera moves for summary judgment

19

dismissing this claim on the ground that there is no genuine factual dispute that the independent directors on the HRC merely followed the compensation recommendations of its independent consultant.

Stock does not dispute that the HRC is composed of independent directors; that it retained WTW, an independent consultant, to make compensation recommendations for the ExCo members; that WTW's recommendation was to maintain Stock's compensation at its then-current level; or that the HRC adopted WTW's recommendations in full. Stock instead argues that summary judgment is inappropriate because (1) Desjardins promised to raise the compensation of <u>all</u> ExCo members and (2) because Ménard was ultimately granted long-term incentive compensation for the same role. Neither argument is persuasive.

First, Stock claims that Desjardins promised to increase the compensation of every ExCo member and ultimately did so for each member besides Stock. But the only evidence that Stock identifies in support of that claim is his own declaration in support of his opposition brief. That declaration contradicts his earlier testimony that Desjardins promised only to "conduct a review and hire a consultant to ... look at everybody's compensation" and "make adjustments accordingly," which is precisely what happened. Stock Tr. 304:23-305:10. "[I]t is well established ... that a party may not create an issue of fact by

20

submitting an affidavit in opposition to a summary judgment motion that ... contradicts the affiant's previous deposition testimony." Kennedy v. City of N.Y., 570 F. App'x 83, 84 (2d Cir. 2014).

Second, Stock claims that WTW's analysis "cannot be reconciled" with Fiera's later decision to award Ménard long-term incentive compensation "based on his performance in his capacity as Global Head of Private Wealth." Pl.'s Mem. Opp'n Mot. Summ. J. ("Opp'n") 23, ECF No. 39. But Stock does not identify any evidence suggesting that this decision was motivated by his age. As Fiera points out, Ménard and Stock were not comparable because Fiera was actively trying to recruit Ménard, who was the CEO of another major Canadian financial institution. Shah v. Wilco Sys., Inc., 806 N.Y.S.2d 553, 559 (N.Y. App. Div. 2005) (affirming summary judgment dismissing NYCHRL disparate-pay claim because the proposed comparators were not "similarly situated in all material respects").

Accordingly, Stock has failed to present evidence to support his claim of age discrimination in connection with his compensation. The Court therefore **grants** Fiera's motion for summary judgment and **dismisses** Stock's pay-discrimination claims under the NYCHRL and NYSHRL.

21

IV.

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed, it is either moot or without merit. For the foregoing reasons, Fiera's motion for summary judgment dismissing Stock's claims for a violation of the NYSHRL and the NYCHRL is **denied** with respect to Stock's claim for age discrimination in connection with his termination and **granted** with respect to Stock's claim for age discrimination in connection with his compensation.

The Clerk is respectfully requested to close all open motions.[2]

SO ORDERED.

Dated:    New York, New York
          January 24, 2026

John G. Koeltl
United States District Judge

---

[2] This is not a motion for which oral argument is needed.

22